Donald Ray YOUNT, Appellant,

v.

The STATE of Texas, Appellee.

No. 617–91.

Court of Criminal Appeals of Texas,
En Banc.

Dec. 8, 1993.

Ian Inglis, Austin, for appellant.

Ken Anderson, Dist. Atty., Sally Ray, Asst.
Dist. Atty., Georgetown, and Robert Hut-
tash, State's Atty., Austin, for the State.

*OPINION ON STATE'S MOTION FOR
REHEARING ON STATE'S PETITION
FOR DISCRETIONARY REVIEW*

MALONEY, Judge.

Appellant was convicted in a trial by jury
of the offense of aggravated sexual assault on
a child. The jury assessed punishment, en-
hanced by two prior felony convictions, at
ninety-nine years confinement.

On direct appeal appellant complained of
the admission of certain expert testimony as
improper bolstering.[1] The Court of Appeals

---

1. The State claims in its brief before this Court
that appellant's objection based on "bolstering"

did not preserve error as appellant should have
objected on the basis of a specific rule of evi-

set forth the relevant facts which we adopt verbatim as follows:

The eight-year-old complainant (seven years of age at the time of the offense) testified that appellant, a resident of the same apartment complex where complainant lived, asked her to come into his apartment on the occasion in question. Complainant related that appellant had her sit on his lap, kissed her and "stuck his finger in my pee pee." Appellant then took her in a closet where "He stuck his wee wee out, then he stuck his pee pee—I mean he stuck his fingers up my pee pee."

Apparently, complainant's six-year-old sister was present during at least part of the incident and went home to tell her mother what had occurred. Complainant's mother testified that as a result of what her six-year-old daughter told her about what was transpiring, she sent her thirteen-year-old son to get complainant. When complainant returned home, "She was a little upset, nervous, excited." A lengthy conversation followed in which complainant related to her mother the events that had occurred in appellant's apartment. The mother's testimony regarding this conversation is consistent with the testimony complainant gave at trial.

A voluntary statement made by appellant was admitted into evidence in which appellant states that the complainant, along with other children, came to his apartment on the occasion in question and asked for something to drink. Appellant's statement further relates that "The little girl came and sat on my lap." Appellant's statement did not reflect that any sexual contact was made.

Complainant's thirteen-year-old brother testified that before his mother sent him to appellant's apartment, he had been in the apartment and had seen his sister sitting on appellant's lap. He observed "her head was on her chest and his arms around her back." Before leaving appellant's apartment he told his sister "it wasn't nice to be sitting on him because it's not nice to do that."

Dr. Beth Nauert, an Austin pediatrician, testified that she examined complainant on August 30, 1988. The examination began with an interview, in which the child related facts comporting with the testimony the child gave at trial. Dr. Nauert's physical examination of the vaginal area failed to reveal any tearing or scarring. Dr. Nauert stated that actual tears or scars are found in less than half the female children that report a history of digital or finger penetration of the vagina. After Dr. Nauert stated the reasons why scarring and tearing do not always occur in young children, the following exchange occurred between the prosecutor and Dr. Nauert:

Q: You testified you've interviewed and examined hundreds of children that have claimed of being either fondled or penetrated either with penis, foreign object or with a finger; it that correct?

A: That's correct.

Q: Okay. Of those hundreds that you've examined, how many have you found to be unfounded?

A: I'm sorry. When you mean invalid, that the child was not telling the truth?

Q: Right, or unfounded that you—

MR. HIGGINBOTHAM [defense counsel]: I'm going to object to this. This is an attempt to bolster that child's testimony. It's not a proper question and I'll object to a response from it. It's not relevant.

MR. BRANSON [prosecutor]: I think it is relevant, Your Honor. She testified she's examined hundreds of children and could testify as to how many unfounded claims that she's later determined and ascertained.

MR. HIGGINBOTHAM: That's just a roundabout way to bolster the child's testimony. It's not proper. I object to that.

THE COURT: Objection overruled.

---

dence. However, because the State did not complain of the nature appellant's trial objection at trial or before the Court of Appeals, that issue is not before us. Although not altogether clear, the

State appears to have argued before the Court of Appeals that error was not preserved because appellant complained of prosecutorial misconduct instead of error by the trial court.

**A:** I have seen very few cases where the child was actually not telling the truth.

*Yount v. State,* 808 S.W.2d 633, 634–35 (Tex. App.—Austin 1991).

Following our holding in *Duckett v. State,* 797 S.W.2d 906 (Tex.Crim.App.1990), the Court of Appeals held that expert testimony embracing an ultimate issue is admissible under Rule of Criminal Evidence 702 (hereinafter "Rule 702") regardless of any incidental bolstering effect, provided that "the prosecution may not bolster or support its own witnesses unless they have been impeached on cross-examination." *Id.* 808 S.W.2d at 635 (quoting *Duckett* and also relying upon a pre-rules case, *Farris v. State,* 643 S.W.2d 694 (Tex.Crim.App.1982), for the same proposition). Upon concluding there had been no impeachment of the complainant, the Court of Appeals held "the testimony constituted bolstering of unimpeached testimony and its admission was reversible error." *Yount,* 808 S.W.2d at 636.

The State criticizes the Court of Appeals' opinion for relying on the common law doctrine of bolstering, rather than the Rules of Evidence, as required in *Duckett.*[2] We granted the State's petition for discretionary review to determine whether the Court of Appeals' opinion was in conflict with *Duckett.* Tex.R.App.P. 200(c)(3).

### I.

In *Duckett* the child complainant's trial testimony was impeached by prior inconsistent statements that were made in a videotaped interview two years prior to trial. *Duckett,* 797 S.W.2d at 907. The State called an expert in rebuttal who testified that children who are sexually abused go through certain behavioral phases. The expert then related each of the identified phases to the

facts of the case. The expert was not asked and did not give an opinion as to whether the complainant was telling the truth.

Analyzing the admissibility of the testimony under Rule 702, we stated that the threshold determination for admitting expert testimony is whether such testimony "if believed, will assist the untrained layman trier of fact to understand the evidence or determine a fact in issue". *Id.* at 914. We cautioned that expert testimony which assists the jury in determining an ultimate fact is admissible, but expert testimony which *decides* an ultimate fact for the jury, such as "a direct opinion on the truthfulness of the child," crosses the line and is not admissible under Rule 702. *See id.* at 914, 918–19. We also recognized that even if admissible under Rules 702 and 704, evidence which has the effect of bolstering a prior witness may be excluded by Rule of Criminal Evidence 403[3] if its probative value is substantially outweighed by its prejudicial effect. *Id.* at 917. In addition, we indicated that such evidence may not be admissible unless there had been prior impeachment. *Id.* at 918–19. Finding the existence of prior impeachment, we held the testimony admissible under Rules 702 and 704. *Id.* at 915 n. 13, 916–17.

▬ The scope of *Duckett*'s holding pertaining to the necessity of prior impeachment was subsequently challenged in *Cohn v. State,* 849 S.W.2d 817 (Tex.Crim.App.1993). In *Cohn,* like in *Duckett,* the State's expert identified certain behavioral characteristics exhibited by sexually abused children and testified that the complainants' behavior was consistent with those behavioral characteristics. The defendant claimed that under *Duckett* the testimony was inadmissible unless the child complainants had first been impeached. We disagreed, holding that the

---

**2.** We granted review of the following grounds for review:

    1. The Court of Appeals erred by basing error on the common-law doctrine of "bolstering," disregarding the Texas Rules of Criminal Evidence.
    2. The Court of Appeals erred by reversing this conviction without determining the trial court abused its discretion or otherwise erred.
    3. The Court of Appeals analyzed the question of harm incorrectly.

We have reviewed the second and third grounds for review and conclude these grounds were improvidently granted.

**3.** Rule of Criminal Evidence 403 provides:

    Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

testimony was admissible as substantive evidence under Rules 401 and 402, unless its probative value was outweighed by the danger of prejudice under Rule 403.[4] We further said:

> We frankly admit that our opinion in *Duckett* may be read to hold that even expert testimony that is relevant as substantive evidence may yet be inadmissible unless it serves some rehabilitative function. *Duckett* seems to suggest that the source for such a rule may be found in Rule 403, supra. [citation omitted] To the extent that *Duckett* may so be read, however, we now disapprove it.

*Id.* 849 S.W.2d at 819. Accordingly, *Cohn* made it clear that Rule of Criminal Evidence 403 does not require impeachment before substantive evidence which has the effect of bolstering may be admitted. The question before us in the instant case is whether impeachment is required under Rule 702.[5]

Rule 702, *Testimony by Experts*, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

TEX.R.CRIM.EVID. 702. We see nothing in the plain language of this rule suggesting that expert testimony that is relevant as substantive evidence is inadmissible unless it serves some rehabilitative function. We now ask whether the testimony here was otherwise admissible as substantive evidence under Rule 702, or whether it "crossed the line" referred to in *Duckett*, in violation of Rule 702.

## II.

In *Duckett*, we cautioned the State against "crossing the line" by soliciting "a direct opinion on the truthfulness of the child." We recognized this principle again in *Cohn*, noting that the expert there "did not testify directly that the children were sexually abused or that they were telling the truth" and therefore the testimony "did not approach the level of 'replacing' the jury, which this Court indicated in *Duckett* ... would violate [Rule] 702." *Cohn*, 849 S.W.2d at 818. *Duckett* suggested that a direct opinion as to the truthfulness of a witness "crosses the line" under Rule 702 because it does more than "assist the trier of fact to understand the evidence or to determine a fact in issue"; it *decides* an issue *for* the jury. *See Duckett*, 797 S.W.2d at 914–15.

■ Others have expressed similar views, concluding that direct testimony as to a witnesses' credibility is inadmissible under Rule 702 because it does not concern a subject upon which the testimony of an expert would *assist* the trier of fact. As expressed by one commentator:

> Allowing psychologists, psychiatrists, or other "experts" to testify to credibility or trustfulness, or the lack thereof, would in most cases fall short of expert knowledge that "will assist the trier of fact." Additionally, the result of allowing such testimony would be that each side would be presenting its own expert who would testify that the other party's law witnesses and expert witnesses were lying.[ ] Such a result can hardly be of assistance to the trier of fact and should therefore be inadmissible.

HULEN D. WENDORF, DAVID A. SCHLUETER, ROBERT R. BARTON, TEXAS RULES OF EVIDENCE MANUAL VII–22 (3rd ed.1991). We recognize the merit in this view and further

---

4. We noted that to the extent the testimony "suggested that evidence of anxiety behavior is enough in and of itself to indicate *sexual* abuse, it may well have been objectionable under Tex. R.Cr.Evid. 705(c[,] )" but appellant did not object on that basis. We also noted that we were not faced with the issue of whether the testimony was "helpful to the jury" under Rule 702. *Cohn*, 849 S.W.2d at 819 n. 4.

5. Because the Court of Appeals recognized Rule 702 as the controlling rule and relied upon *Duckett* (which applied Rule 702), we are compelled to address Rule 702. Failing to appoint to any specific rule of evidence at trial, the parties have not preserved error as to any other rule of evidence. Although appellant claims Rule 608(a) preserves the common law rule requiring prior impeachment, appellant's "bolstering" objection did not preserve error as to that rule.

question whether a psychologist who specializes in child sexual abuse cases is an "expert" on credibility. While a witness may possess "scientific, technical, or other specialized knowledge" concerning sexually abused children, we seriously question whether any such person also possesses "scientific, technical or other specialized knowledge," beyond the realm of the jury, regarding the truthfulness of those children.[6] As stated by one court, "Psychologists and psychiatrists are not, and do not claim to be, experts at discerning truth. Psychiatrists are trained to accept facts provided by their patients, not to act as judges of patients' credibility." *State v. Moran*, 151 Ariz. 378, 728 P.2d 248, 255 (1986); *see also United States v. Azure*, 801 F.2d 336, 340 (8th Cir.1986) ("[n]o reliable test for truthfulness exists and [expert on child abuse] was not qualified to judge the truthfulness of that part of [the child complainant's] story"). Likewise, another commentator has observed:

> Experts on child sexual abuse are not human lie detectors. Nor are they clairvoyant. Nothing in the literature suggests that experts can or should replace the jury as the ultimate arbiters of credibility.

John E.B. Meyers et al, *Expert Testimony in Child Sexual Abuse Litigation*, 68 NEB. L.REV. 1, 121 (1989).[7] Once an "expert" imparts his scientific, technical or specialized knowledge to the jury concerning his area of expertise, jurors are just as capable as the expert in drawing conclusions concerning the credibility of the parties in issue. *Moran*, 728 P.2d at 255; *State v. Batangan*, 71 Haw. 552, 799 P.2d 48, 52 (1990); *see also Commonwealth v. Seese*, 512 Pa. 439, 517 A.2d 920, 922 (1986) (whether a witness is truthful is a question to be answered on basis of "ordinary experiences of life and common knowledge as to the natural tendencies of human nature, as well as upon observations of the demeanor and character of the witness"). In this regard, we are mindful of the limited scope of Rule 702:

> Two themes are prevalent within the language of [Rule 702]. First, the jury must not be qualified to intelligently and to the best degree determine the particular issue without benefit of the expert witness' specialized knowledge. [ ] Second, the clear meaning of the rule must be observed. Prior to adoption of the rules of evidence, this Court reaffirmed expert testimony is admissible to *aid* the jury in its decision, not to *supplant* that decision. [ ] We do not find Rule 702 broadens this predicate for admissibility. The reason behind [Rule 702] remains the same. The use of expert

---

6. We would caution trial courts to ensure that witnesses who purport to be "experts" on child sexual abuse are duly qualified as such. *See* John E.B. Meyers et al., *Expert Testimony in Child Sexual Abuse Litigation* 68 NEB.L.REV 12 (1989) (only "small fraction" of professionals possess sufficient knowledge to qualify as experts in field of child sexual abuse); *see also State v. Batangan*, 71 Haw. 552, 799 P.2d 48, 53–54 (1990) (courts should proceed with caution in admitting expert testimony in sexual abuse cases and ensure that witness is qualified). Further, the testimony given should be scrutinized for its probative value. *See* Meyers, 68 NEB.L.REV. at 66–69 (Child Sexual Abuse Accommodation Syndrome ("CSAAS") is not probative of abuse and should not be used as diagnostic devise; use of CSAAS as substantive testimony that abuse has occurred is extremely misleading, although may have some value as rehabilitative testimony); *see also* William N. Friedrich and Patricia Grambsch, *Child Sexual Behavior Inventory: Normative and Clinical Comparisons*, 4 PSYCHOLOGICAL ASSESSMENT 303, 311 (1992) (questioning utility in individual cases of inventory of sexual behavior in children as means of detecting sexual abuse); William N. Friedrich, *Sexual Victimization and Sexual Behavior in Children: A Review of Recent Literature*, 17 CHILD ABUSE & NEGLECT 59, 64 (1993) (recognizing strong correlation exists between identified sexual behaviors in children and sexual abuse, but suggesting future research should concentrate on establishing greater reliability and validity of new assessment techniques).

7. This commentator further noted that

> ... the literature suggests that on certain aspects of credibility, experts possess knowledge that could assist fact finders. For example, clinical literature describes techniques for detecting coached statements.[ ] Such detection techniques are unknown to average jurors. Additionally, some experts possess knowledge about the developmental capabilities and limitations of children which could help jurors evaluate the validity of attacks on children's credibility. Thus, on some aspects of credibility, experts possess specialized knowledge that could assist the trier of fact.

Meyers, 68 NEB.L.REV. at 121. However, we are not here faced with testimony of this type and accordingly, express no opinion as to its admissibility under Rule 702.

testimony must be limited to situations in which the expert's knowledge and experience on a relevant issue are beyond that of an average juror.

*Duckett,* 797 S.W.2d at 914 (citations omitted) (emphasis in original). We are persuaded by the reasoning of the majority of other courts and commentators and conclude that expert testimony that a particular witness is truthful is inadmissible under Rule 702.[8]

■ The further question in this case is whether the same holds true for expert testimony as to the credibility of a *class* of persons to which the complainant belongs. A number of courts faced with testimony as to the truthfulness of a class of persons to which the complainant belongs have concluded that such testimony is tantamount to direct testimony that the complainant would not lie. *State v. Catsam,* 148 Vt. 366, 534 A.2d 184, 187 (1987) (expert testimony that child victims of sexual abuse do not lie is same as direct comment on credibility of complainant); *Commonwealth v. Ianello,* 401 Mass. 197, 515 N.E.2d 1181, 1184 (1987) (would be unrealistic to allow testimony as to credibility of class to which complainant belongs "and then expect the jurors to ignore it when evaluating the testimony of the child complainant"); *State v. Myers,* 382 N.W.2d 91 (Iowa 1986) (testimony that child sexual abuse victims rarely lie was tantamount to testimony that the complainant would not lie); *State v. Lindsey,* 149 Ariz. 472, 720 P.2d 73, 75 (1986) (testimony that only a small proportion of incest victims lie is tantamount to testimony on guilt of accused). We agree. An expert who testifies that a class of persons to which the victim belongs is truthful is essentially telling the jury that they can believe the victim in the instant case as well. This is not "expert" testimony of the kind which will assist the jury under Rule 702. *See Myers,* 382 N.W.2d at 97 (testimony that child sexual abuse victims rarely lie was not helpful to the jury because it is "within the common knowledge of a juror that these children would have to have some type of sexual experience, instruction or exposure in order to acquire the necessary knowledge to make such accusations and testify accordingly"). In addition, as observed by the Pennsylvania Supreme Court,

... if testimony as to the veracity of various classes of people on particular subjects were to be permitted as evidence, one could imagine "experts" testifying as to the veracity of the elderly, of various ethnic groups, of members of different religious faiths, of persons employed in various trades and professions, etc. Such testimony, admitted as evidence, would encourage jurors to shift their focus from determining the credibility of the *particular* witness who testified at trial, allowing them instead to defer to the so-called "expert" assessment of the truthfulness of the class of people of which the particular witness is a member. In addition, such testimony would imbue the opinions of "experts" with an unwarranted appearance of reliability

---

8. Virtually every jurisdiction which has addressed, in the context of a child sexual assault case, the admissibility of direct testimony as to the truthfulness of the child complainant, has held that such direct testimony is inadmissible. *See, e.g., State v. Moran,* 151 Ariz. 378, 728 P.2d 248, 252 (1986); *People v. Oliver,* 745 P.2d 222, 225 (Colo.1987); *Tingle v. State,* 536 So.2d 202, 205 (Fla.1988); *State v. Batangan,* 71 Haw. 552, 799 P.2d 48, 51 (1990) (reversing earlier case holding such testimony admissible); *Head v. State,* 519 N.E.2d 151, 153 (Ind.1988); *State v. Myers,* 382 N.W.2d 91, 95 (Iowa 1986); *State v. Jackson,* 239 Kan. 463, 721 P.2d 232, 238 (1986); *People v. Matlock,* 153 Mich.App. 171, 395 N.W.2d 274, 277–78 (1986); *State v. Bellotti,* 383 N.W.2d 308, 316 (Minn.Ct.App.1986); *State v. Townsend,* 103 Nev. 113, 734 P.2d 705, 708–09 (1987); *State v. Heath,* 316 N.C. 337, 341 S.E.2d 565, 568–69 (1986); *State v. Middleton,* 294 Or. 427, 657 P.2d 1215, 1221 (1983); *Commonwealth v. Seese,* 512 Pa. 439, 517 A.2d 920, 922 (1986); *State v. Madison,* 53 Wash.App. 754, 770 P.2d 662, 665–66 (1989, review denied); *Zabel v. State,* 765 P.2d 357, 360–62 (Wyo.1988); *see also United States v. Azure,* 801 F.2d 336, 340 (8th Cir.1986) (expert testimony that child witness was "believable" inadmissible under Federal Rule of Evidence 702) *but see State v. Geyman,* 224 Mont. 194, 729 P.2d 475 (1986) (holding expert opinion that child complainant was truthful admissible); *State v. Myers,* 359 N.W.2d 604, 611 (Minn.1984) (although as general rule expert testimony regarding truth or falsity of a witness is inadmissible, state rule of evidence 608(a) removed obstacle to use of such testimony by allowing it where witnesses' credibility attacked). *See generally* Meyers, 68 Neb.L.Rev. at 121 (recognizing "great majority of courts" have rejected expert testimony commenting directly on

upon a subject, veracity, which is not beyond the facility of the ordinary juror to assess.

*Seese,* 517 A.2d at 922 (emphasis in original). We hold that Rule 702 does not permit an expert to give an opinion that the complainant or class of persons to which the complainant belongs is truthful.[9] *See, e.g., Lindsey,* 720 P.2d at 76 (expert testimony that a "very small proportion" of incest victims lie held inadmissible); *Powell v. State,* 527 A.2d 276 (Del.1987) (expert testimony that 99% of child sexual abuse victims are telling the truth held inadmissible); *Myers,* 382 N.W.2d at 97–98 (expert testimony that child sexual abuse victims rarely lie held inadmissible); *Ianello,* 515 N.E.2d at 1184–85 (testimony that "children rarely make these things up" held inadmissible); *Seese,* 517 A.2d at 922 (expert testimony that it is rare for child to lie regarding sexual abuse held improperly admitted); *Catsam,* 534 A.2d at 188 (expert testimony that children do not lie regarding sexual abuse held inadmissible).

For the reasons herein stated, the judgment of the Court of Appeals is affirmed and this cause is remanded to the trial court.

CAMPBELL, Judge, dissenting.

The Third Court of Appeals held in this case that the complained-of testimony of Dr. Nauert was not admissible under Texas Rule of Criminal Evidence 702 because the child complainant had not been impeached at the time of the complained-of testimony. *Yount v. State,* 808 S.W.2d 633, 636 (Tex.App.—Austin 1991). The court of appeals, relying upon our decision in *Duckett v. State,* 797 S.W.2d 906 (Tex.Crim.App.1990), reasoned that the State may not "bolster" its own witnesses unless they have first been impeached on cross-examination. *Yount v.*

*State,* 808 S.W.2d, at 636. After the court of appeals' opinion was handed down, however, we held in a similar case that relevant expert testimony that has the effect of "bolstering" a witness *is* admissible under Rule 702 even if the witness has not been impeached. *Cohn v. State,* 849 S.W.2d 817, 818–820 (Tex.Crim. App.1993). We further explained in *Cohn* that "bolstering," as an evidentiary concept, barely survived the promulgation of the Texas Rules of Criminal Evidence. *Ibid.* Indeed, three members of this Court expressed the view that a naked "bolstering" objection is no longer even tenable under the Rules. *Id.,* at 821–822 (Campbell, J., concurring).

Since the court of appeals did not have the benefit of our decision in *Cohn,* we should follow our usual procedure and summarily vacate the judgment of the court of appeals and remand the case to that court for reconsideration in light of *Cohn.* Not only is that what we *usually* do, it is what a discretionary reviewing court *should* do. To the majority's failure to vacate and remand for reconsideration, I dissent.

McCORMICK, P.J., and WHITE and MEYERS, JJ., join.

---

credibility of a particular child or sexually abused children as a class).

9. Since we hold the evidence inadmissible under Rule 702, we need not address its admissibility under Rule 403. *See Duckett,* 797 S.W.2d at 917 (even if admissible under Rule 702, evidence might be excluded as too prejudicial under Rule 403). We pause, however, to comment on the application of Rule 403 in this context. As we recognized in *Duckett,* much expert testimony is by nature "of such specialized content as to be of great probative value"; therefore the focus in

cases such as *Duckett* and this one, is on the expert's testimony relating to the credibility of the witness in light of the witness' conflicting testimony and inconsistencies. *Id.* When such evidence is offered for impeachment purposes, its probative value is generally enhanced and its prejudicial effect diminished, given that such evidence seeks to respond to evidence that has already attacked an ultimate issue or fact. *Id.* Of course, as we held in *Cohn, Duckett* went too far in indicating that Rule 403 only permits testimony of this type for impeachment purposes and not as substantive evidence. *Cohn,* supra.