**AFFIRM; and Opinion Filed May 2, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-16-00153-CR

_____

**JOSE LUIS MUNOZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. F13-12204-I**

## MEMORANDUM OPINION

Before Justices Bridges, Lang-Miers, and Evans
Opinion by Justice Lang-Miers

The State indicted appellant Jose Luis Munoz on two charges of aggravated sexual assault of a child and one charge of indecency with a child. He pleaded nolo contendere to all charges, waived a jury, and tried the cases to the court without the benefit of a plea bargain. The court found appellant guilty of one charge of aggravated sexual assault of a child, not guilty on the remaining two charges, and assessed punishment at twelve years' imprisonment and a $5000 fine. In one issue on appeal, appellant argues that the trial court erred by "allowing an expert to give the functional equivalent of an opinion that the complainant was truthful[.]" We affirm the judgment.

BACKGROUND

Appellant does not challenge the sufficiency of the evidence to support the conviction. Accordingly, we recount the evidence only as necessary to address appellant's issue and provide context for our opinion.

The complainant, DM, was nineteen years old when she testified at trial. She testified that when she was five years old her parents and siblings moved from California to Carrollton, Texas, where they lived with appellant, his wife, and their children. Appellant was DM's father's nephew. After a few weeks, DM's father moved back to California.

DM described how, during the six months to one year they lived in appellant's house, appellant sexually assaulted her beginning when she was in first grade. The abuse involved touching and penetration of DM's vagina with appellant's penis. DM testified that she was afraid to say anything for fear appellant might "kick us out of the house and we wouldn't have a place to stay and then my family or my sisters and my mom would be mad at me." At some point, DM's father came back to Texas and DM's family moved to their own house a few streets away from appellant's house. Appellant visited DM's house often because he and DM's father had "a really strong bond or connection." DM testified that appellant "would still touch" her over her clothes at her house.

DM testified that as she grew older and became more educated, she realized what appellant had done to her, and she began to have nightmares and flashbacks. When she was sixteen years old, she confided in her sister's husband about the abuse. Eventually the abuse was disclosed, DM went to therapy, and the State indicted appellant.

At trial, the State presented testimony from Carla O'Hara, a clinical therapist with the Children's Advocacy Center, who presided over group therapy sessions that DM attended. She described DM as being "very reluctant to talk about" the abuse at first because DM was shy and

guarded about her family. O'Hara said DM "was very concerned about other people knowing what had happened because she didn't want to be embarrassed or to bring shame on her family." O'Hara said DM attended 114 sessions and over that time eventually talked about the abuse "in great detail." O'Hara sat through the trial and testified that DM's trial testimony was consistent with the details DM discussed in the group therapy sessions.

The State asked O'Hara to describe the types of things she was trained to look for in determining whether a particular child might be lying or exaggerating, and O'Hara testified:

> So we would look for consistent statements or certainly inconsistencies that would point towards a lie, things that don't add up when you compare it to experiences of other family members. We have parent consults to keep the parents informed as to what's going on and if the parents express concerns that it's inconsistent with, you know, other things within their family, that sort of thing.

When the State asked O'Hara whether she saw "any of those red flags or any of those issues about [DM] lying or exaggerating," appellant objected and argued that the question was "bolstering and calling for an inadmissible opinion of truth telling . . . and credibility of a witness." The court overruled the objection, stating "[t]he question is not whether she believed her, but whether she saw any red flags. You may answer." O'Hara testified that she did not see any red flags. Appellant contends the trial court erred by overruling his objection.

DISCUSSION

In his sole issue on appeal, appellant contends that O'Hara's testimony about "red flags" was the "functional equivalent of a direct opinion as to DM's truthfulness," and it was error for the trial court to overrule his objection. He contends that "it defies belief that the trial judge would not have been influenced to some significant degree by the testimony . . . ."

We review a trial court's evidentiary ruling for an abuse of discretion and will reverse only when the court's decision was so clearly wrong as to lie outside the zone of reasonable disagreement. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).

–3–

An expert may not opine about the truthfulness of a particular complainant or a class of persons to which the complainant belongs. *Yount v. State*, 872 S.W.2d 706, 712 (Tex. Crim. App. 1993). However, testimony that assists the trier of fact that is not a direct comment about the truthfulness of the complainant may be admissible. *Schutz v. State*, 957 S.W.2d 52, 73 (Tex. Crim. App. 1997) (expert's testimony concerning signs of coaching or manipulation may assist trier of fact).

In *Schutz*, a social worker testified about the characteristics of a child who has been manipulated to give particular testimony and that, in her opinion, the complainant in that case did not demonstrate any of the signs of having been manipulated. *Id*. at 56–57. The court stated that the social worker did not "express an opinion about whether the child's allegations had been the subject of manipulation but stated merely that the child did not exhibit 'behaviors that point to being manipulated.'" *Id*. at 73. The court concluded that the testimony was not a direct comment on the child's truthfulness. *Id*.

We recently addressed whether similar "red flags" testimony constituted a direct comment on the truthfulness of the complainant. *Rangel v. State*, No. 05-15-00609-CR, 2016 WL 3031378 (Tex. App.—Dallas May 19, 2016, pet. ref'd) (mem. op., not designated for publication). In that case, the forensic interviewer testified that she did not see any "red flags" that the complainant had been manipulated or coached about what to say regarding the abuse. *Id*. at *2. We concluded that the testimony did not constitute a direct comment about the complainant's truthfulness and the trial court did not abuse its discretion by overruling the appellant's objection. *Id*.

Appellant cites *Rangel* and argues that its facts were "manifestly different" from those here. He argues that "[j]ust before giving the offending testimony, O'Hara related that DM's trial testimony was consistent with what [DM] had previously asserted. Then almost immediately

afterwards, [O'Hara] related that her opinions were based on training and experience. She, herself, thus gave her previous testimony the status of an 'expert opinion.'" Appellant argues that "[t]hese elements combine to demonstrate that she was allowed to give inadmissible evidence that DM was truthful." We disagree.

We see no distinction between the testimony in *Schutz* and O'Hara's testimony in this case. O'Hara did not testify that DM was telling the truth, was not lying, or was not exaggerating. Instead, she testified that DM's therapy sessions did not raise any "red flags" she was trained to look for in determining whether a complainant was lying or exaggerating. *See Schutz*, 957 S.W.2d at 73 (witness did not express opinion about whether child's allegations were subject of manipulation but that child did not exhibit "behaviors that point to being manipulated"). Accordingly, we conclude that the trial court did not abuse its discretion by overruling appellant's objection. We resolve appellant's sole issue against him.

CONCLUSION

We affirm the trial court's judgment.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do not publish
TEX. R. APP. P. 47.2(b)

160153F.U05

–5–



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

JOSE LUIS MUNOZ, Appellant

No. 05-16-00153-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 2, Dallas County, Texas
Trial Court Cause No. F13-12204-I.
Opinion delivered by Justice Lang-Miers.
Justices Bridges and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 2nd day of May, 2017.