# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00363-CR

**Tommy Davis, Appellant**

v.

**The State of Texas, Appellee**

## NO. 03-05-00364-CR

**Tommy Wayne Davis, Appellant**

v.

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NOS. 2035225 & D-DC-2004-301944,
### HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Tommy Davis was placed on deferred adjudication community supervision after he pleaded guilty to aggravated assault. *See* Tex. Pen. Code Ann. § 22.02 (West Supp. 2005). A year later, he was convicted by a jury for aggravated sexual assault of a child and sentenced to fifty years' imprisonment. *See id*. § 22.021. At the conclusion of the sexual assault trial, the district court adjudged appellant guilty in the assault case and imposed a twenty-year sentence. In his only point

of error, appellant urges that his counsel did not render effective assistance during the sexual assault trial. Finding no merit to this contention, we will affirm both judgments.

Sharon Flores and her four-year-old daughter, D.B., came to Austin from their home in Alvin to visit family and friends over the Labor Day weekend. They stayed with Flores's friend Tenecia Williams, who shared an apartment with her brother, Kenneth Williams, her sister, Tierra Williams, and Tierra's infant daughter, T.W. On Saturday night, Flores, Tenecia, and Kenneth went to a party, leaving the children in Tierra's care. Appellant, who was Tierra's boyfriend and the father of Tierrica, came to the apartment during the course of the evening. When Flores and the others returned to the apartment at about 3:00 a.m., Tierra was asleep and appellant was sitting in the living room watching television and holding T.W. D.B. was also awake.

Flores testified that she was angry because D.B. was not in bed asleep. When Flores walked into a bedroom, D.B. followed her and began to cry, saying, "Mommy, he touched me, he touched me." D.B. told Flores that appellant had touched her "[b]etween my legs and on my butt." Flores immediately took D.B. to Children's Hospital where she was examined by a sexual assault nurse examiner. The nurse, Kimberley Tarla-Rash, testified that she found an abrasion on D.B.'s vaginal vestibule just to the right of the vaginal opening and a one millimeter tear in her posterior fourchette. The nurse was of the opinion that these injuries occurred no more than seventy-two hours prior to the examination. Dr. Beth Nauert, a pediatrician and expert on child sexual abuse, examined Tarla-Rash's report and was of the opinion that the injuries to D.B.'s vagina were caused by penetration into the sexual organ and were not the result of normal childhood play.

Appellant testified that the two children were asleep when he arrived at the apartment that evening. Later, Tierra also went to bed and appellant sat down to watch a movie on television.

2

T.W. began to cry, so he brought her into the living room and held her. Shortly thereafter, D.B. also awoke and joined them. Appellant denied touching D.B. inappropriately. When told that night what D.B. had said, he immediately protested his innocence. He called the police and volunteered to go to the hospital for an examination.

Appellant complains that his trial counsel failed to elicit crucial testimony regarding D.B.'s injuries, failed to cross-examine D.B., allowed the child's testimony to be improperly bolstered, and impugned appellant's own credibility by offering evidence of another accusation against him. To prevail on his claim of ineffective assistance, appellant must show that his attorneys made such serious errors that they were not functioning effectively as counsel and that these errors prejudiced the defense to such a degree that appellant was deprived of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 771-72 (Tex. Crim. App. 1999). In reviewing a claim of ineffective assistance, we must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To overcome this presumption, the allegations of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). In most cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Id*.

### D.B.'s Injuries

Dr. Nauert testified that a tear or abrasion implies a "bloody surface." Nevertheless, Tarla-Rash's report did not mention the presence of blood during her examination of D.B. Appellant argues that this suggests that D.B.'s vaginal injuries were not inflicted during the hours immediately

3

preceding the examination when D.B. was in appellant's care, but earlier when D.B. was with Kenneth Williams and others. Appellant asserts that his counsel should have pursued this line of defense by specifically questioning Tarla-Rash regarding the absence of blood.

The record reflects that appellant's attorneys were well aware of the significance of the absence of blood. During her jury argument at the conclusion of the guilt-innocence phase, one of appellant's attorneys argued:

> Dr. Nauert told us something that our common sense could have told us but you have testimony to the effect that when somebody is injured they bleed. . . . Where is the blood? A fresh wound bleeds. There is no evidence of blood in the report. Dr. Nauert says, oh, well, they just forgot to write it down.
>
> . . . .
>
> The momma sat on the stand and wept and never mentioned blood on her child. . . .
>
> . . . .
>
> The evidence that would show that it happened that day isn't there. Nobody mentioned it to you. Nobody. Nobody said I found blood in the bed later on or on the couch or on the clothes. Nobody. Nobody said it. Well, that night is the only night that Tommy had anything to do with that child at all. If you think that something happened, and you agree that people that are hurt bleed, then you are going to have to say yes, something happened but Tommy wasn't there.

It is reasonable to infer that defense counsel, knowing that there was no mention of blood in the medical report, did not question Tarla-Rash about this because they did not want to risk having the nurse say that she had observed the presence of blood but had failed to note it. A reasonably effective attorney could conclude that in this instance, silence was golden and presented an effective basis for argument.

4

### D.B.'s Testimony

D.B., who was five years old at the time of trial, was a reluctant witness. When first called by the State, she professed not to know the answers to most of the State's questions, including her last name. At the court's suggestion, the State elected to forgo further questioning until later that morning. When recalled, D.B. was more forthcoming, but she still refused to respond to questions pertinent to the accusations against appellant. It was only when she was called to the stand a third time, and her mother was allowed to remain in the courtroom, that D.B. testified that appellant touched her "pee-pee." She illustrated this statement by pointing to her vaginal area.

Defense counsel elected not to cross-examine D.B. Instead, she was called as a defense witness the following day. Once again, D.B. was largely unresponsive, and she denied remembering any of the things she had said about the night in question.

Appellant complains that defense counsel's failure to cross-examine D.B. denied him his constitutional right of confrontation. But given the child's obvious discomfort on the stand and the minimal value of her testimony to the State, counsel could reasonably believe that it was the better strategy not to pursue cross-examination that day, but to allow D.B. to go home for the night and recall her the next day. There is no reason to believe that immediate cross-examination of D.B. would have been of any more benefit to the defense than the course followed by counsel.

### Forensic Interview

D.B. was interviewed at the Center for Child Protection by forensic interviewer Alia Alsaffar. The interview was observed by Detective Kenneth Murphy, who prepared a summary. D.B. told Alsaffar that appellant touched her with his hand under her dress and under her panties, appellant touched the inside of her "pee part" and butt, and this touching hurt. Appellant contends

5

that counsel was ineffective for failing to object to the testimony recounting D.B.'s statements during the interview on hearsay grounds.[1]

For the most part, the substance of D.B.'s statements during the forensic interview was adduced by the defense, not by the State. As appellant acknowledges, the defensive strategy was to emphasize that D.B. did not accuse appellant of penetrating her in her initial outcry to her mother, and that she mentioned penetration only when she was interviewed at the Child Protection Center by a person familiar with the evidence needed for a successful sexual assault prosecution. In other words, the defense sought to suggest that D.B. had been coached into making her accusations against appellant. In his brief, appellant dismisses this strategy as "completely unreasonable" because the Alsaffar interview was the only occasion in which D.B. said that appellant penetrated her.

In assessing trial counsel's performance, we must avoid the distorting effects of hindsight. *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). It is important to note that defense counsel did not adduce the only evidence of penetration in this cause. The State's medical testimony, while circumstantial, was arguably more persuasive evidence of penetration than D.B.'s statements to Alsaffar. "A lawyer may well choose not to object to hearsay or other inadmissible evidence if it potentially enhances his client's defense or at least does not seriously prejudice it." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). On this record, we cannot say that defense counsel's strategy was so ill-advised as to fall outside the broad range of reasonable professional assistance.

---

[1] Appellant also cites *Crawford v. Washington*, 541 U.S. 36 (2004), although he does not expressly assert that this testimony violated his Sixth Amendment confrontation right. As the Court noted in *Crawford*, the Sixth Amendment places no constraints on the use of prior testimonial statements if the declarant appears for cross-examination at trial. *Id*. at 59 n.9.

### Dr. Carter's Testimony

Dr. William Carter, a psychologist, was called by the State to give expert testimony regarding child sexual abuse. Although Carter had treated hundreds of sexually abused children, he had not examined or treated D.B., nor had he performed a psychological evaluation of appellant. Carter testified regarding the psychological and behavioral patterns often observed in the victims and perpetrators of child sexual abuse. Appellant argues that while Carter "was careful . . . to avoid stating that [D.B.] was telling the truth and Appellant was lying, this was nonetheless the clear import of his testimony," to which defense counsel should have objected.

A qualified expert may testify regarding the characteristics commonly exhibited by sexually abused children and may state that the complainant exhibited these characteristics, but the expert may not express the opinion that the complainant is telling the truth. *Yount v. State*, 872 S.W.2d 706, 708-09, 712 (Tex. Crim. App. 1993); *Duckett v. State*, 797 S.W.2d 906, 915 (Tex. Crim. App. 1990). In this case, Dr. Carter expressed the opinion that D.B.'s behavior, as described in the State's hypothetical questions, was consistent with that commonly observed among children who have been sexually abused. As appellant concedes, Carter did not testify that D.B. was telling the truth or that appellant was lying. That another attorney might have objected to some of Carter's testimony is not evidence of ineffectiveness. *See Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979).

### Extraneous Allegation

During appellant's own testimony, and during defense counsel's cross-examination of several State witnesses, evidence was adduced that appellant had been previously accused of sexually assaulting another child. The record reflects, however, that counsel acted at appellant's

7

behest. Before testimony began, counsel had appellant confirm for the record that "you want me to go into the allegations in [the other cause]" on the theory that appellant's accusers in the instant case were aware of the earlier allegations and thus motivated to make similar accusations. In his brief, appellant argues that this was not a good strategy, and he further complains that his attorneys did not effectively pursue the strategy in any case. He also notes that the record is silent as to whether counsel had explained to him the consequences of offering evidence of the extraneous accusation.

Having insisted that his attorneys pursue this particular defensive strategy, appellant is in no position to claim on appeal that they were ineffective for having done so. That counsel felt the need to get appellant's wishes on the record is circumstantial evidence that counsel had unsuccessfully sought to dissuade appellant from this course of action. We will not assume that counsel failed to discuss the possible consequences of this strategy with appellant before trial.

Appellant has not overcome the strong presumption that counsel's conduct at trial fell within the wide range of reasonable professional assistance. The point of error is overruled and the judgments of conviction are affirmed.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: August 31, 2006

Do Not Publish

8