Affirmed and Memorandum Opinion filed October 7, 2008








Affirmed and Memorandum Opinion filed October 7, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00701-CR

_______________

 

DAPHNE JONES, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 182nd District Court

Harris County, Texas

Trial Court Cause No. 1083468

                                                                                                                                               


 

M E M O R A N D U M  O P I N I O N

A jury found appellant, Daphne Jones,
guilty of aggravated sexual assault of a child and assessed punishment at 10
years confinement.  In her sole issue on appeal, appellant asserts that she was
denied effective assistance of counsel because her trial counsel failed to
object to improper opinion testimony.  We affirm. 

 

 

 

 








Facts

Complainant=s paternal grandmother, Etna Riley,
testified at trial that complainant=s mother died when she was a small
child.  Riley stated that she shared joint custody of complainant with
complainant=s maternal grandmother, Carolyn Watson.  According to Riley, complainant
stayed with Riley on weekdays and with Watson on weekends.  Watson had been in
a romantic relationship with appellant for several years. 

Around April 16, 2006, a few weeks
after complainant=s seventh birthday, complainant and Riley were watching a
news story involving a missing child.  Riley explained to complainant that
there are adults who hurt children, and that complainant should always talk to
Riley if she had a problem or if she felt violated.  Complainant became very
upset and told Riley that appellant had sexually assaulted her while she had been
visiting at Watson=s house.  According to Riley, complainant told Riley that she
had been watching television in her brother=s room when appellant called her into
the living room; laid complainant on the floor; pulled her pants down; put her
mouth on complainant=s vagina; and hurt complainant.  Riley called the police and
Children=s Protective Services.

Houston Police Officer Kelly Wallace,
who was in charge of investigating complainant=s assault allegation, testified that
complainant was interviewed by a forensic examiner at the Children=s Assessment Center and was taken to
a hospital for a physical examination.  The examination revealed no physical
evidence of abuse.  Officer Wallace stated that she reviewed complainant=s videotaped interview with the
forensic examiner, and that the interview was not suggestive.  Officer Wallace
also conducted a supplemental interview with complainant.  








Officer Wallace was not surprised
that complainant=s medical exam did not reveal physical evidence of abuse
because this case involved an oral sexual assault.  Officer Wallace also stated
that it is not uncommon for there to be a delay between abuse and outcry. 
Officer Wallace testified that she requested charges be brought against
appellant for aggravated sexual assault after she reviewed complainant=s videotaped interview; reviewed 
complainant=s medical records; interviewed complainant, complainant=s brother, Riley, and Watson; and
attempted to interview appellant, who refused to talk to Officer Wallace.

Complainant testified at trial that
appellant had sexually assaulted her at Watson=s house sometime after her seventh
birthday on March 28, 2006.  Watson had left complainant and her brother in the
care of appellant to go to a game room.  Complainant testified that she had
been watching television with her brother in her brother=s bedroom.  When appellant called her
into the living room, complainant complied because she thought it was time to
eat.  Complainant=s brother remained in his bedroom talking on the telephone. 
Complainant testified that after she entered the living room, appellant picked
her up; laid her down on the floor; pulled down her pants and underwear; spread
her legs apart with her hands; scooted up close between her legs and started
licking her vagina; stopped licking her when her brother got off the telephone;
and sat back on the couch.  

Complainant testified that appellant
licking her felt bad and wet and hurt a little bit.  Complainant stated that
she got up after appellant stopped licking her, pulled her underwear and pants
up, and went back to her brother=s room.  Complainant demonstrated on
a doll how appellant picked her up, laid her on the floor, and pulled down her
underwear.  She identified the vagina on the doll as the place appellant had
licked her.  Complainant also testified that she told Riley about the assault
after they watched a news story about a child getting hurt.  Complainant
identified appellant at trial as sitting in a wheelchair.  Complainant
testified that she had never seen appellant in a wheelchair before trial, and
that appellant walked like a normal person but was not able to move around very
quickly.








Appellant testified that her romantic
relationship with Watson lasted about four years.  She stated that her
relationship with complainant was distant and she denied ever watching
complainant or her brother when Watson went to a game room to play bingo. 
Appellant also testified that she seldom was alone with complainant or her
brother.  Appellant testified that she left Watson in January 2006 and moved in
with two friends, Gerald Eagleton and Cedrick Wingate.  Wingate and Eagleton
confirmed that appellant had been staying with them since January 2006.  

Appellant testified that she had
injured her neck and lower back in a serious accident and had stopped working
in September 2005.  She said she had been in great pain since the accident, had
gone to physical therapy for a year, and had been taking medication to relieve
her pain.  According to appellant, she was not in a wheelchair in January 2006
but was walking with a cane.  Appellant testified that she felt better in March
2006 than at the time of trial because she received proper medication from her
doctor.  Appellant=s attorney asked her to demonstrate whether she could place
his briefcase on the floor and get on her knees to simulate getting between complainant=s legs; appellant was unable to do
so.  Appellant did not present any medical records or call her doctor as a
witness.

Appellant testified that she was able
to cook, get in and out of her car, and drive.  Riley testified that she saw
appellant open the big heavy doors of her car without a problem, get in and out
of the car by herself without struggling to do so, and drive the car.  Riley
also testified that she took complainant to Watson=s house between March 28 and April
16, 2006, and saw appellant at the house but never saw appellant use a
wheelchair or a cane.  Riley did not see appellant exhibiting difficulty
walking, and Riley demonstrated for the jury how appellant was walking in early
2006.

Appellant denied molesting complainant and testified
that complainant either fabricated the sexual assault or had been coached. 
Appellant did not recall Officer Wallace contacting her regarding the sexual
assault investigation.

 

Analysis








To prevail on an ineffective
assistance claim, appellant must show: (1) her trial counsel=s performance fell below an objective
standard of reasonableness; and (2) there is a reasonable probability that, but
for the error, the result of the proceeding would have been different.  Wiggins
v. Smith, 539 U.S. 510, 521, 534 (2003); Garza v. State, 213 S.W.3d
338, 347‑48 (Tex. Crim. App. 2007); Hernandez v. State, 988 S.W.2d
770, 772 (Tex. Crim. App. 1999) (en banc).  Appellate review of trial counsel=s representation is highly
deferential and presumes that counsel=s actions fell within the wide range
of reasonable and professional assistance.  Garza, 213 S.W.3d at 348.

If the reasons for counsel=s conduct at trial do not appear in
the record and it is at least possible that the conduct could have been
grounded in legitimate trial strategy, we will defer to counsel=s decisions and deny relief on an
ineffective assistance claim on direct appeal.  Id. To warrant reversal
where trial counsel has not been afforded an opportunity to explain those
reasons, the challenged conduct must be so outrageous that no competent
attorney would have engaged in it.  Roberts v. State, 220 S.W.3d 521,
533‑34 (Tex. Crim. App. 2007), cert. denied, 128 S. Ct. 282
(2007).  A vague, inarticulate sense that counsel could have provided a better
defense is not a legal basis for finding counsel constitutionally deficient.  Bone
v. State, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002).

Appellant argues that she was denied
effective assistance of counsel because her trial counsel failed to object to
the highlighted portion of the following exchange between Police Officer
Wallace and the State:

THE STATE: When did, based on your investigation,
[complainant] B when did this sexual assault occur on [complainant]?

THE WITNESS: [Complainant] said that it happened when
she was seven.

THE STATE: And when did [complainant] B what is [complainant=s] birthday?

THE WITNESS: She turned seven on March the 28th.

THE STATE: Of?

THE WITNESS: >06.

THE STATE: 2006?

THE WITNESS: Yes.

THE STATE: And you testified earlier that
[complainant] outcried or reported to her Granny Etna on what date?   

THE WITNESS: I believe it was April the 16th but let
me check.  On April the 16th of 2006.

THE STATE: So, we=ve
got a time period with B if [complainant=s]
seven, the front end of that time period or time line starts with March 28th,
2006?








THE WITNESS: March 28th of 2006.

THE STATE: To April the 16th, 2006?

THE WITNESS: Correct.

THE STATE: So, on or about those dates is when this is
alleged to have happened?

THE WITNESS: That=s
correct.

THE STATE: And based on your investigation, you
believe to be true?

THE WITNESS: I believe that to be the truth.

(Emphasis added.)

 

Although the record is silent
regarding trial counsel=s trial strategy, appellant argues that there can be no
conceivable trial strategy for failing to object to Officer Wallace=s testimony because expert testimony
that a particular witness is truthful is inadmissible.  See Schutz v. State,
957 S.W.2d 52, 59 (Tex. Crim. App. 1997) (en banc); Yount v. State, 872
S.W.2d 706, 711 (Tex. Crim. App. 1993) (en banc).  As a threshold matter, the challenged
exchange is somewhat ambiguous; it is unclear whether the witness= answer, AI believe that to be the truth,@ refers to the dates or to the
alleged conduct.  In any event, we conclude that appellant cannot demonstrate
prejudice even if it is assumed for argument=s sake that trial counsel=s failure to object to Officer
Wallace=s testimony constituted deficient
performance.  Appellant argues that the sole issue before the jury was whether
appellant sexually abused complainant and contends she was harmed because
Officer Wallace was the only other witness the State called besides the
complainant.  Appellant stresses that she received a 10-year prison sentence.

In addition to Officer Wallace and
the complainant, the State called complainant=s grandmother, Riley.  Further, the
jury heard from two of appellant=s friends, Eagleton and Wingate, whom
her defense counsel called as witnesses in addition to appellant.  Defense
counsel=s theory at trial was that appellant
did not have the physical capability to abuse complainant; that appellant did
not live at the Watson house at the time of the alleged abuse; and that
complainant fabricated the abuse because Riley wanted some of the worker=s compensation money appellant
expected to receive for her accident-related injuries.








During closing argument, counsel
argued that appellant was physically incapable of abusing complainant and was
sitting in a wheelchair.  Counsel reminded the jury that appellant was unable
to handle his briefcase, bend down, and get on the floor as he had asked her to
do for the jury to simulate the actions described by complainant.  Defense
counsel asked the jury to consider the testimony of appellant=s friends, Eagleton and Wingate, who
had testified that appellant had a hard time getting around and was in pain. 
Counsel also stated that appellant had moved out three months before the time
of the alleged abuse.

The State never mentioned Officer
Wallace or her testimony during closing argument. 

In addition to complainant=s testimony describing the sexual
abuse, complainant=s grandmother Riley described how and when complainant made
the outcry about the abuse.  Riley testified that, when she took complainant to
visit Watson between March 28, 2006 and the time of complainant=s outcry on April 16 or 17, 2006, she
saw appellant at Watson=s house.  Riley never saw appellant using a cane or a
wheelchair.  Riley demonstrated for the jury how appellant walked at that
time.  The jury also heard appellant=s statement that she felt better in
March 2006 than she felt at trial because she was taking her medication as
prescribed by her doctor in March 2006.

Riley also stated that appellant had
no difficulties opening and closing the big heavy doors of her car and did not
struggle getting in and out of her car.  Both of her friends confirmed that
appellant would drive her car Awhenever she had a doctor=s appointment or something.@  Appellant acknowledged she could
get in and out of her car and drove her car to church and to go grocery
shopping with her friends.  The State emphasized that appellant presented no
evidence of medical records or physician testimony to demonstrate that she was
indeed physically incapable of abusing complainant.








During closing, the State disputed
that the motivation for this allegation was worker=s compensation money.  The State
argued that appellant was the one who needed financial support and had to move
in with her two friends after leaving Watson=s house.  The  State pointed out that
appellant did not present any records from the Work Force Commission indicating
she would be receiving worker=s compensation money.   The State emphasized that Riley did
not need appellant or her money because she was employed and was able to raise
complainant.  Riley testified that she worked as a private duty nurse taking
care of critically ill people and had no problem making ends meet.

Finally, the punishment range for
aggravated sexual assault of a child is 5 to 99 years or life imprisonment.  See
Tex. Penal Code Ann. ' 12.32 (Vernon 2003), ' 22.021(e) (Vernon Supp. 2008). 
Appellant was sentenced at the lower end of the possible punishment range. 
Although appellant apologized and asked for probation during the punishment
phase of the trial, appellant maintained her innocence claiming she never
harmed anyone, did not abuse complainant, and that complainant had lied about
the abuse.

In light of this record, we conclude
that appellant has not shown a reasonable probability that, but for the
asserted error, the result of the proceeding would have been different. 
Because appellant failed to show that but for her trial counsel=s failure to object to Officer
Wallace=s statement the outcome of the
proceeding or punishment would have been different, she has failed to meet her
burden and cannot prevail on her ineffective assistance claim.

Accordingly, we overrule appellant=s issue and affirm the trial court=s judgment.

 

 

 

 

 

/s/        William J. Boyce

Justice

 

Judgment rendered and Memorandum
Opinion filed October 7, 2008.

Panel consists of Justices Yates,
Seymore and Boyce.

Do not publish C Tex. R. App. P. 47.2(b).