

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00426-CR

Rolando **SALAZAR**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2012CR2966
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
            Marialyn Barnard, Justice
            Luz Elena D. Chapa, Justice

Delivered and Filed:  June 18, 2014

AFFIRMED

Rolando Salazar was found guilty by a jury of two counts of aggravated sexual assault of a child.  On appeal, Salazar contends the trial court erred in admitting hearsay testimony and testimony regarding the complainant's credibility.  Salazar also contends the evidence is insufficient to support his convictions.  We affirm the trial court's judgment.

### BACKGROUND

While P.C.'s aunt was babysitting P.C. at Salazar's apartment, P.C. was placed in time out in a bedroom for fighting with her sister.  P.C. was six years old at the time, and Salazar was her

step-grandfather. The bathroom of the apartment was accessible only through the bedroom in which P.C. had been placed. Salazar entered the apartment to use the bathroom.

When P.C.'s mother picked her up, P.C. told her mother that she did not like Salazar to be kissing her all over her body. Upon further questioning, P.C. stated that Salazar had touched her with his hand and mouth on her vagina, and his finger was touching her vagina. P.C.'s testimony at trial was consistent with her outcry to her mother.

### SUFFICIENCY OF THE EVIDENCE

In his third issue, Salazar challenges the sufficiency of the evidence to support his convictions. The jury found that Salazar: (1) intentionally and knowingly caused P.C.'s female sexual organ to contact Salazar's mouth; and (2) intentionally and knowingly penetrated P.C.'s female sexual organ with his finger. Although Salazar appears to agree in his brief that the testimony of P.C. and her mother generally would support the jury's finding of Salazar's guilt, Salazar contends that the trial court's erroneous admission of testimony and the lack of any physical evidence allowed the jury to speculate that Salazar was guilty rather than rationally inferring his guilt from the evidence.

"When reviewing the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt." *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). "The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses." *Id*. Juries are permitted "to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial." *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). A reviewing court determines if a jury's inferences are

reasonable "based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id*. at 17.

With regard to Salazar's efforts to discount the evidence he contends was erroneously admitted, all of the evidence admitted at trial, whether properly or improperly admitted, is considered by this court in conducting a sufficiency review. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Accordingly, the jury was permitted to rely on the testimony Salazar contends was improperly admitted in making its findings.

As Salazar recognizes in his brief, his conviction could be based solely on P.C.'s uncorroborated testimony. TEX. CODE CRIM. PROC. ANN. art. 38.07(a), (b)(1) (West Supp. 2013); *Connell v. State*, 233 S.W.3d 460, 466 (Tex. App.—Fort Worth 2007, no pet.). Although Salazar cites evidence and testimony in his brief from which the jury could have found that no sexual assault occurred, the jury is the sole judge of the credibility of the witnesses and the weight to be attached to the absence of any physical evidence of a sexual assault. *Merritt*, 368 S.W.3d at 525. Viewing the evidence in the light most favorable to the verdict, the combined and cumulative force of all the evidence supports the jury's finding of guilt.

### HEARSAY

In his first issue, Salazar contends the trial court erred in admitting hearsay testimony through three witnesses. The State responds that error was not preserved or the admission of the testimony was not harmful.

Questions regarding the admissibility of evidence are reviewed under an abuse of discretion standard. *Saavedra v. State*, 297 S.W.3d 342, 349 (Tex. Crim. App. 2009). In order to preserve an issue for appellate review, a timely and specific objection is required. *Layton v. State*, 280 S.W.3d 235, 238-39 (Tex. Crim. App. 2009); TEX. R. APP. P. 33.1. In addition, the issue on appeal must comport with the objection made at trial. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex.

Crim. App. 2002). Finally, the objection must be made each time the inadmissible evidence is offered. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). "An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003).

A.     P.C.'s Stepfather

P.C.'s stepfather testified that he was out-of-town when he learned from his wife that something had happened involving P.C. P.C.'s stepfather testified that P.C.'s mother called him on the phone, and responded to further questions as follows:

> Q.     [By Prosecutor] Okay. When you talked to your wife on the phone, was she upset?
> A.     Upset and sad.
> Q.     What did she tell you?
> [Defense Counsel]: Objection. That clearly calls for hearsay testimony. What did she tell you? She is not the alleged victim, she is — so anything that she would have told him would be hearsay, an out-of-court statement that is not relevant to this proceeding.
> [Prosecutor]: Excited utterance.
> [Defense Counsel]: That's not excited utterance.
> THE COURT: Overruled. You can answer it.
> Q.     [By Prosecutor] What did she tell you?
> A.     What was happening and she was going to confront him directly.
> Q.     Okay. But specifically, what did she tell you?
> [Defense Counsel]: Again, I'm going to object, have to object to preserve the record, that that is not relevant and that's hearsay testimony.
> THE COURT: Overruled.
> THE WITNESS: That he was talking to [P.C.] and he was touching her parts and he was kissing him (sic) and he was telling her things about the Bible, what we were learning.

In its brief, the State contends that the testimony is not hearsay because it was not being offered for the truth of the matter asserted. We disagree. In asking P.C.'s stepfather to state "specifically" what his wife told him, the specifics were being offered for their truth. Moreover, the prosecutor's effort to persuade the court that the testimony was admissible as an excited

utterance demonstrates that the prosecutor believed the testimony was hearsay. Accordingly, we hold the trial court erred in admitting this testimony.

B.     Teddy Butolph

Teddy Butolph was a social worker at Family Service Association, the agency where P.C.'s mother worked. After P.C. made her outcry, P.C.'s mother consulted with Butolph about the actions she should take. Butolph testified that her supervisor requested that she meet with P.C.'s mother to discuss the sexual abuse of P.C. With regard to her conversation with P.C. about the events, Butolph responded to questions as follows:

> Q.     And when you were talking to [P.C.], did she give you details about what had happened to her?
> A.     In my professional opinion, the alleged victim was able to —
> [Defense Counsel]: Objection. She's trying to give opinion evidence as to something that a third party told her. That's clearly outside the realm. She does not have the authority to testify or buttress other people's testimony. She cannot testify whether it's true or not. It's beyond the scope of her ability pursuant to case law and statutes.
> THE COURT: I'm sorry. What was the question, again?
> [The Prosecutor]: I asked if she —
> COURT REPORTER: "When you were talking to [P.C.], did she give you details about what had happened to her?"
> THE WITNESS: Yes. Sorry.
> THE COURT: That's okay. That answered the question. Move on.
> Q.     [By Prosecutor] All right. And as she was describing what had happened to her, did she gesture in any way to show you or demonstrate what she was talking about?
> A.     Yes.
> Q.     And describe that, please, for the jury.
> A.     The word "kiss" and "lick" was used as —
> [Defense Counsel]: Objection, that's clearly hearsay.
> THE COURT: Sustained.
> [Defense Counsel]: We'd ask for an instruction to the jury.
> THE COURT: All right. Disregard that last response.
> [Defense Counsel]: And we move for a mistrial.
> THE COURT: That's denied.
> Q.     [By Prosecutor] Without saying what she said, did she show you with her body where this occurred?
> A.     I observed pointing to the chest, pointing to the downward region, which I interpreted as the vaginal area, and pointing to the back lower region, which I interpreted as the anal area.

Q.     Okay.  And those were in response to your questions about where she was abused?
A.     No, I did not ask that question.
Q.     So she just volunteered that?
A.     Yes.

Although the trial court sustained the hearsay objection made by defense counsel to the initial testimony by Butolph regarding P.C.'s statements, no objection was made to the subsequent testimony about the locations on P.C.'s body where "this occurred" in P.C.'s description of what happened to her.  Therefore, since the trial court sustained the only objection that was made, no error was preserved as to Butolph's later testimony about the sexual contact in the locations P.C. described.  *Layton*, 280 S.W.3d at 238-39; *Martinez*, 98 S.W.3d at 193; TEX. R. APP. P. 33.1.

C.     Belinda Castellanos

Belinda Castellanos was a sexual assault investigator with the Texas Department of Family and Protective Services.  Castellanos stated that her job entailed investigating reports of sexual abuse to determine if the abuse occurred and to ensure the child's safety.  Castellanos explained that she is part of a multidisciplinary team that works with law enforcement and others to share information during the course of the investigation.

With regard to P.C., Castellanos explained that P.C. was interviewed by a Bexar County Forensic Interviewer, Mary Floyd, and Castellanos observed the interview from another room. With regard to P.C.'s explanation of the events, Castellanos testified as follows:

Q.     [By Prosecutor] Can you explain to the jury what you observed.
A.     She was asked to identify her body parts and she was asked to identify her vaginal area.  She used the word "cookie."
       [Defense Counsel]:  Judge, we object to anything that the child would have said.
       THE COURT:  Sustained.
Q.     [By Prosecutor]  Without saying what she said.  Did she point to you or show you where she was touched.
A.     Yes.
Q.     Okay.  And were those her private parts?
A.     Yes.

Q.     And how did she demonstrate?
A.     She used hand gestures.

Similar to the testimony of Butolph, the trial court sustained the only hearsay objection that was made to Castellanos's testimony.  Her testimony regarding the areas that P.C. demonstrated were touched came into evidence without objection.  Accordingly, any error with regard to the admission of such testimony was not preserved for appellate review.  *Layton*, 280 S.W.3d at 238-39; *Martinez*, 98 S.W.3d at 193; TEX. R. APP. P. 33.1.

D.     Rule 403

Salazar also asserts that the foregoing testimony should have been excluded under Rule 403.  At trial, however, no objection was made challenging the admissibility of the evidence under Rule 403.  Accordingly, this complaint is not preserved for appellate review.  *Layton*, 280 S.W.3d at 238-39; TEX. R. APP. P. 33.1.

E.     Harm

Although the trial court erred in overruling the hearsay objection to the testimony by P.C.'s stepfather, the error must be disregarded unless it affected Salazar's substantial rights.  *See* TEX. R. APP. P. 44.2(b).  When erroneously admitted evidence is cumulative of other evidence that is properly admitted or admitted without objection, and that evidence proves the same fact, the erroneous admission is harmless.  *Eggert v. State*, 395 S.W.3d 240, 244 (Tex. App.—San Antonio 2012, no pet.); *Barrera v. State*, 321 S.W.3d 137, 157 (Tex. App.—San Antonio 2010, pet. ref'd).

In this case, the statement made by P.C.'s stepfather that Salazar was touching P.C.'s parts is less specific and proves the same facts established by the testimony of P.C., P.C.'s mother, Butolph, Castellanos, and the sexual assault nurse examiner who testified about P.C.'s statements during the medical exam.  Accordingly, the hearsay statement by P.C.'s stepfather is cumulative

of other properly admitted evidence or evidence admitted without objection, rendering the trial court's error harmless. *Eggert*, 395 S.W.3d at 244; *Barrera*, 321 S.W.3d at 157.

### COMPLAINANT CREDIBILITY/COACHING

In his second issue, Salazar contends the trial court erred in admitting expert testimony concerning P.C.'s credibility through three witnesses. The State responds that two of the witnesses testified about P.C.'s consistency, not her credibility. The State further responds that the testimony of the third witness was harmless.

Questions regarding the admissibility of evidence are reviewed under an abuse of discretion standard. *Saavedra*, 297 S.W.3d at 349. Expert testimony that a particular witness is truthful is not admissible because it does not assist the jury. *Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993); *Cantu v. State*, 366 S.W.3d 771, 777 (Tex. App.—Amarillo 2012, no pet.). "Once an 'expert' imparts his scientific, technical or specialized knowledge to the jury concerning his area of expertise, jurors are just as capable as the expert in drawing conclusions concerning the credibility of the parties in issue." *Yount*, 872 S.W.2d at 710. "Expert testimony that a child did not exhibit indications of coaching or manipulation[, however,] has been held not to constitute an opinion on the child's truthfulness." *Cantu*, 366 S.W.3d at 777; *see also Schutz v. State*, 957 S.W.2d 52, 73 (Tex. Crim. App. 1997); *Reynolds v. State*, 227 S.W.2d 355, 366 (Tex. App.—Texarkana 2007, no pet.); *Burns v. State*, 122 S.W.3d 434, 437 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Some of the clues or indications that can demonstrate the absence of coaching are: (1) the provision of sensory detail which indicates the child has attached emotional detail to the incident by describing how something felt, smelled, or looked; (2) delay in disclosure; (3) age appropriate language; and (4) consistency in detail. *See Galvan v. State*, No. 08-98-00299-CR, 2000 WL 1038159, at *4 (Tex. App.—El Paso July 27, 2000, no pet.) (not designated for publication).

During opening argument, defense counsel referred to P.C. being coached, asserting:

We think the evidence is going to show you that this child was coached by the mother. We think the evidence is going to show you that the aunt or stepaunt, [P.S], was present during a couple of these incidences where we think the evidence is going to show you that the child was asked questions and she would have to look to her mother for what the response is and then she could respond.

Accordingly, in this case, expert testimony establishing that P.C. was not coached was important to rebut the opening statement. *See Kipp v. State*, 876 S.W.2d 330, 335-36 (Tex. Crim. App. 1994).

A.      Belinda Castellanos

As previously noted, Castellanos was the Department's sexual assault investigator who observed P.C.'s forensic interview. Salazar's complaint with regard to Castellanos's testimony is based on the following exchanges:

Q.      And when — you know, when you're — when you're interviewing a child such as [P.C.], or if [the forensic interviewer's] interviewing, what kinds of things are you looking for to help you determine if abuse occurred?
A.      Any detailed description. You know, a child of that age would not know about digital penetration, any sexual — you know, any sexual behaviors that a child of that age should not know about.
Q.      And so in — if they're descriptive about those things, does that tend to show it was something they experienced?
A.      Yes. And if they're consistent in their details —
Q.      Yes.
A.      — and they don't waiver from their – what they're explaining —
Q.      Yes.
A.      it's — it's usually a credible statement.
Q.      And was the child consistent in this type of —
[Defense Counsel]: Objection. Objection. That's asking her in direct violation of the prior court ruling in cases that —
THE COURT: I believe the question is: Was she consistent? I believe she can answer whether the information was consistent, yes or no.
[Defense Counsel]: So my objection is overruled?
THE COURT: Yes.
[Defense Counsel]: Thank you.
THE COURT: You're welcome.
Q.      [By Prosecutor] Was she consistent?
A.      Yes.

***********

Q.      Now, when a child is being interviewed, can you, as an expert in the area of sexual abuse of children, can you tell if a child —

[Defense Counsel]: Objection, Judge. Did she say "as an expert in this area"? She's never been offered as an expert. We object to that categorization of this person as an expert.

THE COURT: I guess you want to establish the predicate —

[Prosecutor]: Well, Judge, she's testified that she's interviewed thousands of children in her career over 12 years with Child Protective Services.

THE COURT: What was your question going to be?

Q. [By Prosecutor] My question is: Do you look for things that might indicate if a child has been coached?

A. Oh, yes.

Q. Okay. And explain to the jury, you know, what sorts of things you would see if a child had been coached.

A. If a child's being coached, they can't really sometimes go into detail about what happened, about certain things. And it's very — if you ask them a question, the can't give you — it's usually the same — you know, it's repetitious or it's not — it's not consistent.

Q. So in your experience with a child who's [P.C.'s] age — at the time, six years old — are they capable of maintaining a sophisticated lie?

A. It would just vary on the child. But you would be able to tell inconsistencies in their story.

Q. You would be able to tell?

A. In their statement.

Q. And did you see any of that with [P.C.]?

[Defense Counsel]: Objection. Again, that's asking for a conclusion. This person is not an expert and is not qualified to say that person is telling the truth or not, which is the ultimate question, asked in direct violation of this case, Your Honor.

THE COURT: What says the State?

[Prosecutor]: Well, Judge, she is an expert. She's — she's been investigating child sex abuse for 12 years, has interviewed thousands of children.

THE COURT: Can I see Counsel at the bench and bring your case up here.

(At the bench, out of the hearing of the jury).

[Defense Counsel]: Your Honor, there's numerous cases.

THE COURT: Do you have it?

[Defense Counsel]: I do have the case here. There's Salinas versus Salinas, there's Yount versus State saying an expert can't testify as to the credibility of the witness of the child.

[Prosecutor]: That's not what I asked her, though. That's not what I —

[Defense Counsel]: (Inaudible). There's another page behind that first page.

THE COURT: You know the Yount case, don't you?

[Prosecutor]: I haven't read it.

THE COURT: Reference to Yount on the issue.

[Prosecutor]: This is —

[Defense Counsel]: This is referring to —

[Prosecutor]: Oh, I'm sorry, okay.

THE COURT: That one before on this case.

[Prosecutor]: Judge, I'm not asking her to say the child was credible, I was asking her if there were inconsistencies that she saw.

THE COURT: Well, that question I'll allow, but I do want you to be careful. Let's proceed.

(In open court).

Q.    [By Prosecutor]  Okay.  Ms. Castellanos, we were talking about kids that are potentially coached and their ability to keep things consistent when they're telling about the abuse, and you say that they — they can't, especially a child age six; is that correct?

A.    Most likely.

Q.    Okay.  And so in this case, did you see any inconsistencies like that with [P.C.]?

A.    No.

In this case, Castellanos was not asked about her opinion on P.C.'s credibility.  Instead, Castellanos was asked whether P.C. remained consistent in relaying the details of the incident as an indicator that she was not coached.  Castellanos's testimony that P.C. did not exhibit indications of coaching does not constitute an opinion on P.C.'s truthfulness and is admissible.  *Schutz*, 957 S.W.2d at 73; *Cantu*, 366 S.W.3d at 777; *Reynolds*, 227 S.W.2d at 366; *Burns*, 122 S.W.3d at 437.

B.    Cynthia Garcia

Cynthia Garcia is the sexual assault nurse examiner who examined P.C.  After responding to questions regarding reasons children sometimes make partial disclosures of abuse, the following exchanges occurred which are contained on the pages of the record cited in this section of Salazar's brief:

Q.    [By Prosecutor]  So when a child does make a partial disclosure, does that necessarily mean that they're not being consistent in your opinion?

A.    No.

[Defense Counsel]:  Objection.  Again, that's going directly to the — whether the child is believable or not believable.  Clearly that's inadmissible.

THE COURT:  Overruled.

Q.    [By Prosecutor]  So you answer was no?

A.    Repeat the question.

Q.    Okay.  When you have a child who does a partial disclosure, where she, you know, this happened and waits a little bit when she's more comfortable and tells a little bit more, that's, in your opinion, not inconsistent?

A.    Correct.

Q.    Okay.  And, in fact, that's very common in children who have been abused?

A.     In my experience, yes, it's very common.

Q.     Now, I want to talk about your findings. The redness, you said it was — what did you say it was? Nonspecific. Is that — let me ask it this way. I'm sorry. Is the history that's given by the child consistent with your findings?

    [Defense Counsel]: That's again right on point.

    THE COURT: What is your question, please?

    [Prosecutor]: Is her history consistent with the findings.

    [Defense Counsel]: That's strictly —

    THE COURT: Oh. Actually, I — that's okay. She can — Overruled. Go ahead.

Q.     [By Prosecutor] Is her history consistent with your physical findings?

A.     Yes.

****

Q.     Now, in your experience interviewing children and getting their history of abuse, are you looking or listening for things the child might say that might indicate to you that they've been coached?

    [Defense Counsel]: Objection, Your Honor. Again, going back to making the determination of the credibility of the witness. That's outside her purview. It's also a violation —

    THE COURT: I'm going to let her answer. Overruled.

    [Defense Counsel]: Thank you.

    THE COURT: You're welcome.

    THE WITNESS: So are we trying to decide if they've been coached?

Q.     [By Prosecutor] Yeah. Are you looking for things when asking them questions? Or can you tell?

A.     Not necessarily. Usually because everything that I — the patient is there because — I'm getting the history from the patient to determine on how I'm going to check them. I have to pretty much believe a lot of the things that they tell me. A lot of the times children, if they're pretty detailed in their history, giving specific details, more than likely they weren't coached, and they're being, you know, very direct and articulate during the history about exactly what happened to them, that, you know, they normally aren't being coached. Now, if they're a little wishy-washy when they're answering questions, you can kind of get that feeling. Although, I'm not an investigator. Whether they were coached or not really doesn't matter to me. So I'm there to do a medical forensic examination on the patient, so I really just want to know what happened so that I know exactly how to check them medically to make sure that they're okay.

Q.     And in [P.C.'s] case, did she give you specific articulate details about the abuse?

A.     Yes.

Q.     And was it age appropriate for her?

A.     Yes.

Q.     Okay. Are these things that a normal six-year-old would know?

A.     No.

Q.     And when she gives you these specific details, does that — does that indicate to you that it was — are they experiential details? Like details because something happened to a child that she remembers, she's experienced?

- 12 -

[Defense Counsel]: Objection, Judge. That's trying to get exactly what Yount and Salinas say is not permissible evidence. Letting her try to testify whether something is true or not true. That's clearly outside the realm. She's a SANE nurse. She's supposed to do an exam, period.

[After trial court requests to see counsel at bench, prosecutor withdraws question and passes witness].

Similar to the questioning of Castellanos, Garcia was not asked about her opinion on P.C.'s credibility. Instead, Garcia was asked about indicators that showed that P.C. was not coached. Garcia's testimony that P.C. did not exhibit indications of coaching does not constitute an opinion on P.C.'s truthfulness and is admissible. *Schutz*, 957 S.W.2d at 73; *Cantu*, 366 S.W.3d at 777; *Reynolds*, 227 S.W.2d at 366; *Burns*, 122 S.W.3d at 437.

C.     Mary Floyd

Mary Floyd is the Bexar County Forensic Interviewer who Castellanos observed conducting the forensic interview of P.C. Initially Floyd was asked about indicators of whether P.C. had been coached, including about whether P.C. was able to describe peripheral details. Floyd then, however, "cross[ed] the line." *Yount*, 872 S.W.2d at 709. In explaining that she attempted to get a complete picture of the events, Floyd stated that she wanted the child to tell her everything because "that just adds credibility." The trial court erred in overruling the objection to Floyd's statement and in denying the motion to strike the statement. *Id*. at 710-11.

In addition, Floyd properly testified about the significance of a child's ability to provide sensory details; however, she "cross[ed] the line" in stating that the sensory details "add[ed] credibility." *Id*. at 709. The trial court erred in overruling defense counsel's objection and denying the motion to strike the statement. *Id*. at 710-11.

The remainder of Floyd's testimony on the pages cited in Salazar's brief relates to indicators that P.C. had not been coached. This testimony was proper. *Schutz*, 957 S.W.2d at 73; *Cantu*, 366 S.W.3d at 777; *Reynolds*, 227 S.W.2d at 366; *Burns*, 122 S.W.3d at 437.

D.     Harm

Although the trial court erred in overruling the objections to Floyd's testimony that the details provided by a child add to the child's credibility, the error must be disregarded unless it affected Salazar's substantial rights. *See* TEX. R. APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). The erroneous admission of evidence does not require reversal if this court, after examining the record as a whole, has a fair assurance that the error did not influence the jury, or had but a slight effect. *Cobb v. State*, 85 S.W.3d 258, 272 (Tex. Crim. App. 2002).

Having examined the record as a whole, we hold that the error did not have a substantial and injurious effect or influence on the jury. The jury heard P.C.'s testimony, P.C.'s mother's testimony regarding her outcry, and the sexual assault nurse examiner's testimony of what P.C. reported to her. The jury also heard testimony that P.C. remained consistent in recounting the details of what occurred. The jury charge further instructed the jurors that they "are the exclusive judges of the facts provided, of the credibility of the witnesses, and of the weight to be given the testimony." Finally, Floyd's brief references to the details adding to a child's credibility were not emphasized by the State during closing argument.

## CONCLUSION

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH