# NO. 12-22-00090-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *FLOYD MARCELIUS BARNES,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 159TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | *§* | *ANGELINA COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Floyd Marcelius Barnes appeals his conviction for attempted sexual assault. In four issues, Appellant argues that the trial court erred by admitting certain evidence and his trial counsel was ineffective. We affirm.

### BACKGROUND

Appellant was charged by indictment with attempted sexual assault, enhanced by two prior felony convictions. He pleaded "not guilty," and the matter proceeded to a jury trial.

At trial, the evidence showed that Anna[1] was seated on a bench in front of a barber shop at around 8:00 p.m. The barber shop lies between a pool hall and a residence. Appellant, who was familiar to Anna, approached her and asked if she would like a beer. She agreed. When Anna arose, Appellant grabbed her and pushed her across the ground and into a chain link fence at the neighboring residence. He pulled up her dress, pulled his pants down, and tried to pull her underwear down and his penis out while pinning her against the fence. Anna kicked and screamed at him to stop.

The residence owner, Ernest Owens, heard Anna's screams and came to her aid. He first told Appellant to stop, but Appellant ignored him. Owens then retrieved a golf club, again told

---

[1] A pseudonym.

Appellant to stop, and was again ignored. Owens hit Appellant in the head with the club once to no effect. He hit him again more forcefully, and Appellant backed away. Appellant looked at Owens and appeared to be in a daze. He then walked a couple of blocks and sat on a street corner, while Anna left the scene to tend a hand laceration she incurred by grabbing the fence. Someone other than Anna or Owens alerted the police. After an investigation, the police arrested Appellant for attempted sexual assault.

Ultimately, the jury found Appellant "guilty" as charged. Appellant pleaded "true" to the enhancement paragraphs, and the jury assessed his punishment at imprisonment for twenty-seven years. This appeal followed.

## ADMISSIBILITY OF EVIDENCE

In Appellant's first, second, and third issues, respectively, he argues that the trial court erred by admitting the police body cam statements of Anna, expert witness testimony regarding Anna's credibility, and the police body cam statements of Appellant.

### Standard of Review and Applicable Law

We review a trial court's decision on the admissibility of evidence under an abuse of discretion standard. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Id.* If the trial court's evidentiary ruling is correct under any applicable theory of law, it will not be disturbed even if the trial court gave a wrong or insufficient reason for the ruling. *Id.*

### Anna's Statements

Appellant contends that the trial court erred by admitting Anna's statements in the body cam videos because he was denied the opportunity to confront and cross-examine her. Based on our review of the record, we cannot agree that Appellant was denied the opportunity to confront and cross-examine Anna.

Anna appeared before the trial court on the first day of testimony. The court warned her that she could be arrested if she failed to stay or return. Anna was not called to testify that day. Her body cam statements were admitted without objection.

On the second day of testimony, Daniel Boots, an Angelina County District Attorney's office investigator, testified about the difficulties the investigators had locating Anna for trial. Boots was finally able to locate her in Tyler and serve her with a subpoena on the first day of

2

testimony. He spent about twelve hours with Anna that day, and his observations caused him to question her mental functioning. At times, she appeared to speak to herself and others who were not present. She held and stared at her subpoena but did not seem to understand what it was. She often seemed confused and unable to understand spoken information. When Anna was told that she would need to be available for court the next day and that it might be best that she spend the night in town, she covered her face, squealed, and made faces indicating discomfort. She apologized profusely and stated that she was not handling the situation well. Boots testified that the parties agreed to release Anna from her subpoena. She did not testify at trial.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The main purpose of the Confrontation Clause is to secure the opportunity of cross-examination, which is the principal means by which a witness's believability and the truthfulness of her testimony are tested. *Johnson*, 490 S.W.3d at 909. Confrontation Clause claims are subject to preservation requirements under Texas Rule of Appellate Procedure 33.1(a)(1)(A)). *Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010).

Because Appellant had the opportunity to object to the admission of Anna's body cam statements and failed to do so, we conclude that he failed to preserve this issue for our review. *See* TEX. R. APP. P. 33.1(a)(1); *Burt*, 396 S.W.3d at 577-78. Accordingly, we overrule Appellant's first issue.

## Credibility Testimony

Appellant contends that the trial court erred by admitting the direct testimony of Norma Sanford, the sexual assault nurse examiner (SANE), regarding Anna's credibility because it was an endorsement of the truthfulness of her statements. Specifically, he complains of the following testimony:

> STATE: And so in terms of [Anna's] report of what happened to you, what evidence did you observe in your exam that you feel like was consistent with or corroborated her report?
>
> SANFORD: The—the injuries that I saw to her hands. It was very clear that she had become entangled in something.

Before a complaint may be presented for appellate review, the record must show that it was made to the trial court by a timely request, objection, or motion. TEX. R. APP. P. 33.1(a)(1). An appellant fails to preserve error by failing to object when he has the opportunity. *Burt v.*

3

*State*, 396 S.W.3d 574, 577-78 (Tex. Crim. App. 2013). Appellant did not object to the testimony in question. Because Appellant had the opportunity to object to the testimony and failed to do so, we conclude that he failed to preserve this issue for our review. *See* TEX. R. APP. P. 33.1(a)(1); *Burt*, 396 S.W.3d at 577-78.

Furthermore, even if Appellant preserved his issue, we could not grant him relief. Expert testimony that decides an ultimate fact for the jury, such as a direct opinion on the truthfulness of a complainant, is not admissible under Rule 702. *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993); *see* TEX. R. EVID. 702 (governing admissibility of expert witness testimony). However, expert testimony that assists the jury in determining an ultimate fact is admissible. *Id.* Here, Sanford did not give a direct opinion that Anna did not fabricate her story and was truthful about the allegations. We conclude that the trial court would not have erred to overrule an objection to the testimony. *See id.*

For the foregoing reasons, we overrule Appellant's second issue.

## Appellant's Statements

Appellant argues that the trial court erred by admitting the videotaped statements he made to the police while "under arrest . . .[,] handcuffed, . . . [and] surrounded by at least five [officers]. He contends that he was under arrest from the time the police approached and questioned him because, under the circumstances, a reasonable person would believe his liberty was compromised to the degree associated with formal arrest. The specific circumstances Appellant cites are that 1) he was handcuffed, 2) he was surrounded by at least five officers with additional officers patrolling the scene, 3) the officers discussed arresting him, 4) he was not told he was free to leave and refuse to answer questions, and 5) he was not told why the officers were asking him questions.

The record does not show that Appellant's complaint was made to the trial court by a timely request, objection, or motion. Therefore, we conclude that he has not preserved this issue for our review. *See* TEX. R. APP. P. 33.1(a)(1).

Furthermore, even if Appellant preserved his issue, we could not grant him relief. The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966). Custodial interrogation means questioning

initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Id.*

In determining whether an individual was in custody, the ultimate inquiry is whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *Stansbury v. California*, 511 U.S. 318, 322, 114 S. Ct. 1526, 1528-29, 128 L. Ed. 2d 293 (1994) (per curiam). The determination depends on the objective circumstances, not on the subjective views of either the interrogating officers or the person being questioned. *Id.* 511 U.S. at 323, 114 S. Ct. at 1529.

The custody determination is made on an ad hoc basis after considering all the objective circumstances. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). At least four general situations exist that may constitute custody, including when 1) the suspect is physically deprived of his freedom of action in a significant way, 2) a law enforcement officer tells the suspect that he cannot leave, 3) law enforcement officers create a situation that would lead a reasonable person to believe his freedom of movement is significantly restricted, and 4) probable cause to arrest exists and law enforcement officers do not tell the suspect he is free to leave. *Id.* at 255. In the first through third situations, the restriction on freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention. *Id.* In the fourth situation, the officer's knowledge of probable cause must be manifested to the suspect, and custody is established only if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe he is under restraint to a degree associated with an arrest. *Id.* The reasonable person standard presupposes an innocent person. *Id.* at 254.

The record here does not support Appellant's contention that a reasonable person in his circumstances would believe his liberty was compromised to the degree associated with formal arrest. In Officer Adam Coats's body cam video, Coats approaches Appellant, identifies himself, and asks how Appellant is doing. He informs Appellant that there is an allegation that he was taking advantage of a girl, and Appellant appears confused. Coats asks whether Appellant would like to tell him what happened, and Appellant states, "[Anna]." About that time, Officer Rene Gutierrez arrives and addresses Appellant.

In Officer Gutierrez's body cam video, Gutierrez asks Appellant, "What's up, man?" Appellant responds, "Just chilling." Gutierrez responds, "That ain't what I'm hearing." Appellant

tells Gutierrez that he and Anna were chilling at the club, drinking, and smoking weed. At some point, they began arguing and had an altercation. Gutierrez asks another officer to request emergency medical services (EMS) for Appellant. Gutierrez handcuffs Appellant and informs him that he is detained. Gutierrez walks away from Appellant and discusses the situation with another officer in a low voice. Two officers remained near Appellant while awaiting EMS. They asked no further nonmedical questions of him.

Officer Gutierrez subsequently spoke with Anna, who told him about the incident. He then spoke with a sergeant about possibly charging Appellant with attempted sexual assault. Appellant was not nearby during these conversations. Officer Coats interrogated Appellant at the hospital after Mirandizing him[2] and subsequently arrested him for attempted sexual assault.

Based on the record before us, we cannot conclude that Appellant was in custody when he made his statements to the police on the street corner. Contrary to Appellant's assertions, he was not handcuffed or "surrounded" by officers when he made the statements. He was seated on the street corner, did not try to leave, and was not told he could not leave. Appellant was not privy to any of the discussions of possible charges against him. He was informed of an allegation that he was "taking advantage of a girl," but not specifically that he was accused of an offense or that the police found the allegation credible. Under all the circumstances, we conclude that there was no formal arrest or restraint on freedom of movement of the degree associated with a formal arrest when Appellant made the statements in question, and the trial court would not have erred by denying a motion to suppress them. *See Stansbury*, 511 U.S. at 322, 114 S. Ct. at 1528-29.

For the foregoing reasons, we overrule Appellant's third issue.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In Appellant's fourth issue, he argues that his trial counsel was ineffective for failing to raise any objections at trial and presenting only limited evidence during his punishment trial.

### Standard of Review and Applicable Law

In reviewing an ineffective assistance of counsel claim, we follow the United States Supreme Court's two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). Under the first prong of the *Strickland* test, an appellant must show that counsel's performance

---

[2] Appellant does not challenge on appeal the admission of his statements to Officer Coats at the hospital.

6

was "deficient." ***Strickland***, 466 U.S. at 687, 104 S. Ct. at 2064; ***Tong v. State***, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." ***Strickland***, 466 U.S. at 687, 104 S. Ct. at 2064. To be successful, an appellant must "show that counsel's representation fell below an objective standard of reasonableness." ***Id.***, 466 U.S. at 688, 104 S. Ct. at 2064; ***Tong***, 25 S.W.3d at 712.

Under the second prong, an appellant must show that the "deficient performance prejudiced the defense." ***Strickland***, 466 U.S. at 687, 104 S. Ct. at 2064; ***Tong***, 25 S.W.3d at 712. The appropriate standard for judging prejudice requires an appellant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Strickland***, 466 U.S. at 694, 104 S. Ct. at 2068; ***Tong***, 25 S.W.3d at 712. A reasonable probability is a probability sufficient to undermine confidence in the outcome. ***Id.*** An appellant claiming ineffective assistance of counsel must affirmatively prove prejudice from counsel's deficient performance. ***Mitchell v. State***, 989 S.W.2d 747, 748 (Tex. Crim. App. 1999).

Review of trial counsel's representation is highly deferential. ***Tong***, 25 S.W.3d at 712. We indulge in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ***Strickland***, 466 U.S. at 689, 104 S. Ct. at 2065. It is Appellant's burden to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. ***Id.***; ***Tong***, 25 S.W.3d at 712. Moreover, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. ***Thompson v. State***, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Rarely is the record on direct appeal sufficiently developed to fairly evaluate the merits of a claim of ineffectiveness. ***Bone v. State***, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. ***Thompson***, 9 S.W.3d at 813. Appellant must prove both prongs of the ***Strickland*** test by a preponderance of the evidence to prevail. ***Tong***, 25 S.W.3d at 712.

**Analysis**

Appellant first argues that the cumulative effect of his trial counsel's errors and omissions was to deny him a fair trial. Specifically, he observes that his counsel did not object to the admission of any evidence. Appellant particularly complains that his counsel did not object to the admission of Anna's body cam statements, leaving the jury "with but one conclusion, to take [her] story as true." The State argues that the trial court might have sustained a Confrontation Clause objection to Anna's body cam statements, but any deficiency of Appellant's trial counsel in failing to object caused no prejudice to the defense for two reasons. First, the SANE report and the testimony of Owens and Sanford provided sufficient evidence of Appellant's guilt. Second, if Appellant's trial counsel lodged a successful Confrontation Clause objection, the State would likely have called Anna to testify. In that case, the State argues, the court would likely have found Anna incompetent to testify and therefore unavailable. Consequently, according to the State, the court would have admitted the body cam statements over Appellant's Confrontation Clause objection.[3]

Based on the record before us, we cannot conclude that trial counsel's performance was deficient for failing to object to the admission of evidence. Regarding Anna's body cam statements, Appellant has not met his burden to overcome the presumption that, under the circumstances, his trial counsel's failure to lodge a Confrontation Clause objection might be considered sound trial strategy. *See* **Strickland**, 466 U.S. at 689, 104 S. Ct. at 2065; **Tong**, 25 S.W.3d at 712. "Cross-examination is inherently risky, and a decision not to cross-examine a witness is often the result of wisdom acquired by experience in the combat of trial." **Ex parte McFarland**, 163 S.W.3d 743, 756 (Tex. Crim. App. 2005). "It is frequently a sound trial strategy not to attack a sympathetic eyewitness without very strong impeachment." *See **id.***

As the State argues, if Appellant's trial counsel lodged a successful Confrontation Clause objection, the State would likely have called Anna to testify. If she testified, Anna would likely have been a sympathetic witness. She appeared credible and cooperative in the videos. It is also unlikely that the defense had strong impeachment evidence of Anna. Nothing in the record indicates that Anna had a motive to fabricate her story. To the contrary, the facts that she left the scene of the offense, did not call the police, and emphasized to the officers that Appellant had

---

[3] We note that besides a declarant's unavailability, a prior opportunity to cross-examine is also required to overcome a Confrontation Clause objection. *See **Crawford v. Washington***, 541 U.S. 36, 59, S. Ct. 1354, 1369, 158 L. Ed.2d 177 (2004).

never done anything like that before tend to negate any notion that she fabricated her story. Under these circumstances, counsel could have reasonably preferred to allow the body cam statements alone into evidence rather than those statements and Anna's live testimony.

In addition to keeping a potentially sympathetic witness off the stand, counsel's decision not to lodge a Confrontation Clause objection allowed him to attempt to use Anna's failure to testify to Appellant's advantage in closing arguments. First, counsel gave the following reason for the defense's decision not to force Anna to testify:

> I'm not responsible for the victim, and I in 30 years of practice have never subpoenaed a witness who is the victim. I don't want to intimidate them. And that could be charged against me if they say I somehow pressured them. So I don't talk to victims mostly for that reason.

Later, counsel attempted to use Anna's failure to testify as a reason to find Appellant "not guilty" in the following arguments:

> But I don't think you can make a case beyond a reasonable doubt without the young lady's testimony for whatever reason. Not my job to call it. Not my job to prove it. She don't want to come up here and face you and tell you the truth, then she has that not to do it, and you have the obligation to follow the law and not guilty.

Under these circumstances, we cannot say that Appellant has met his burden to overcome the presumption that his counsel's decision not to raise a Confrontation Clause objection might be considered sound trial strategy. *See Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *Tong*, 25 S.W.3d at 712.

Regarding any other failures to object, Appellant fails to specify what objections his trial counsel should have made and why the specific evidence was inadmissible. When an appellant alleges his counsel was deficient in failing to object to the admission of evidence, he must show, as part of his claim, that the evidence was inadmissible. *Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002). To the extent that Appellant might argue his counsel should have objected to the admission of the evidence in question in his second and third issues, we concluded above that there was no error in the admission of that evidence. *See Doyle v. State*, 875 S.W.2d 21, 23 (Tex. App.—Tyler 1994, no pet.) ("failure to object to that which is unobjectionable is not ineffective assistance of counsel").

Appellant further argues that "'but for' trial counsel's decisions to present only limited evidence during punishment, there would have been a different result." We find no merit to this argument. Defense counsel called Pastor Steven Pinkney of New Beginning Baptist Church,

where Appellant was a member, to testify on Appellant's behalf. Pinkney testified that Appellant sometimes performed tasks at the church and was always respectful. On cross-examination, he confirmed that Appellant attended church when he was not in trouble but was intermittently incarcerated and unable to attend. Appellant neither identifies the additional witnesses who should have testified nor describes the substance of any potential witness's testimony. *See Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004) (to obtain relief on ineffective assistance claim based on uncalled witness, appellant must show witness was available to testify and testimony would have benefitted defense).

Because Appellant fails to show that his trial counsel's performance was deficient, he fails to meet his burden of proving his counsel's ineffectiveness. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Tong*, 25 S.W.3d at 712. Accordingly, we overrule Appellant's fourth issue.

## DISPOSITION

Having overruled Appellant's first through fourth issues, we *affirm* the trial court's judgment.

GREG NEELEY
Justice

Opinion delivered June 14, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JUNE 14, 2023**

**NO. 12-22-00090-CR**

**FLOYD MARCELIUS BARNES,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 159th District Court

of Angelina County, Texas (Tr.Ct.No. 2021-0538)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*